**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAPPELL FLADGER, | : | |
| | : | Civil Action No. 12-5982 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRENTON PSYCHIATRIC EAST 2 | : | |
| TREATMENT TEAM, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| CHAPPELL T. FLADGER, | : | |
| | : | Civil Action No. 12-6419 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| TRENTON PSYCHIATRIC E2 | : | |
| TREATMENT TEAM, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Chappell T. Fladger
Trenton Psychiatric Hospital
Trenton, NJ 08628
    Plaintiff pro se

**WOLFSON,** District Judge

Plaintiff Chappell T. Fladger, an involuntarily-committed mental patient confined at Trenton Psychiatric Hospital in Trenton, New Jersey, seeks to bring an action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

## I. BACKGROUND

On September 25, 2012, this Court received from Plaintiff a Civil Cover Sheet identifying four Defendants -- Trenton Psychiatric Treatment Team Unit East 2, the Department of Human Services, Trenton Psychiatric Hospital, and Human Services Police -- and a two-page handwritten document, (collectively referred to hereinafter as the "Complaint") which the Clerk's Office docketed as a Complaint received under Civil Action Number 12-5982. In that handwritten document, Plaintiff alleges that, on an unspecified date, he had advised his Treatment Team that fellow patient Keita Bema was going to attack him and that the Treatment Team had responded by discussing with Plaintiff the possibility of moving Mr. Bema and of talking with Mr. Bema about his behavior. Later, however, the Treatment Team told Plaintiff that they were not going to say anything to Mr. Bema because they did not want an altercation to occur. Plaintiff alleges that on November 22, 2010, Keita Bema entered Plaintiff's room and attacked him, causing a fractured nose and a detached retina. Plaintiff alleges that his constitutional rights were violated because the Treatment Team should have prevented the attack. Plaintiff seeks monetary damages in the amount of $250,000.00.

On October 12, 2012, this Court received from Plaintiff another Civil Cover Sheet and a one-page form complaint identifying as Defendants the Trenton Psychiatric E2 Treatment Team,

---

[1] Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a).

"et al.," as well as an Application for leave to proceed in forma pauperis, and a form Consent and Registration Form to Receive Documents Electronically which referred to pre-existing Civil Action Number 12-5982. The Clerk's Office docketed this submission as a new complaint received, with attachments, under a new Civil Action Number 12-6419. On November 28, 2012, this Court received from Plaintiff a third submission, containing a reference to the more recent Civil Action Number 12-6419, which consisted of 54 pages, including a letter addressed to the Clerk of the Court and describing the November 12, 2010, incident in approximately the same terms as were used in the submission received on September 25, 2012, in Civil Action No. 12-5982, and numerous exhibits including various psychiatric reports, state tort claims and a state court complaint, and medical records related to Plaintiff's injuries. It is apparent to this Court that the submissions docketed under Civil Action No. 12-6419 refer to the same November 22, 2010, incident and were intended to be submissions supporting the original Complaint received in Civil Action No. 12-5982. Accordingly, this Court will order the Clerk of the Court to administratively terminate Civil Action No. 12-6419 as duplicative and to docket in Civil Action No. 12-5982 copies of those documents now docketed in Civil Action No. 12-6419. The Court will proceed with consideration of the Complaint in Civil Action No. 12-5982, as supplemented by Plaintiff's later submissions.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, in forma pauperis actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45

(3d Cir. 2013). The Court must "accept as true all well-pled factual allegations in the complaint, and view the allegations of the complaint in the light most favorable to the plaintiff." Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 260 (3d Cir. 2007) (citation omitted).

In addition, any complaint must comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However,

> [w]hile a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Moreover, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. at 678. In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. See also Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (cautioning that the Twombly/Iqbal standard "[does] not provide a panacea for defendants").

4

Taking the Supreme Court's guidance into account, the Court of Appeals for the Third Circuit instructs that the analysis, to determine whether a complaint meets the pleading standard, unfolds in three steps: first, the court outlines the elements a plaintiff must plead to state a claim for relief; second, the court must "peel away" those allegations that are no more than "conclusions" not entitled to the assumption of truth; and, finally, the court must look for well-pled factual allegations, assume their veracity, and then "'determine whether they plausibly give rise to an entitlement to relief.'" Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). "This last step is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)) (cited in Thomaston v. Meyer, No. 12-4563, 2013 WL 2420891, *2 n.1 (3d Cir. June 5, 2013); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV. ANALYSIS

A. Rule 17

Plaintiff's status as a civilly-committed mental patient raises the question whether he is entitled to appointment of a guardian ad litem pursuant to Fed.R.Civ.P. 17(c)(2), which requires a federal court to appoint a guardian ad litem, or issue another appropriate order, "to protect a minor or incompetent person who is unrepresented in an action."

In Powell v. Symons, 680 F.3d 301 (3d Cir. 2012), the U.S. Court of Appeals for the Third Circuit held that a district court must conduct a sua sponte Rule 17 enquiry only if there is some "verifiable evidence" of incompetence, (not just mental illness) such as a judicial determination that the individual is not competent to stand trial in a criminal proceeding or that he suffers from a mental illness of the type that would render him or her legally incompetent. 680 F.3d at 307. "Bizarre behavior," alone, is not sufficient to trigger a mandatory enquiry. Id.

Powell was a consolidated appeal of two pro se prisoner civil rights cases, in which the prisoner plaintiffs had moved for, and been denied, appointment of counsel at the trial court level. One of the two prisoner plaintiffs suffered from a delusional disorder, had been evaluated in a contemporaneous criminal proceeding by a clinical psychiatrist who had submitted to the criminal court a detailed report of his observations and findings, and had been adjudged incompetent to stand trial on the criminal charges. Id. at 304-05. The other prisoner plaintiff had provided a letter from his psychiatrist stating that the prisoner suffered from major depression

6

and attention deficit disorder and also stating, "I do not feel he is competent at this time to represent himself in court. I would recommend that he be given a public defender, if at all possible." Id. at 309. There was no other medical evidence of the second prisoner's mental health in the record. In denying the motions for appointment of counsel, the trial courts had not considered the necessity for appointment of a representative under Rule 17.

With respect to the first prisoner, who had been adjudicated incompetent in a contemporaneous criminal proceeding, the Court of Appeals found that the psychiatric report was so thorough, and the criminal court's finding of incapacity so amply supported by the record, that it had been an abuse of discretion for the trial court not to enter, sua sponte, an order appointing a representative under Rule 17. Id. at 308-09.

With respect to the second prisoner, who had submitted the conclusory letter, the Court of Appeals found that the letter was "hardly overwhelming" evidence of incompetency. Id. at 310. Nevertheless, the Court of Appeals found, based on the letter writer's conclusion that the prisoner was not competent, that the trial court should have performed some evaluation of the competency question, noting that it might be that the evidence of incompetency was so limited that it was rebutted by other evidence in the record or by the district court's own experience, without the need for a full-blown hearing. Id. at 310.

Here, Plaintiff has submitted to this Court several Trenton Psychiatric Hospital Psychiatric Assessment and Addendum Reports, dated January and April 2011 and January 2012. Those Reports reflect that Plaintiff was convicted of two sexual assaults and that he was civilly committed as a sexually violent predator after completing his criminal sentences. The Reports are generally consistent and reflect that Plaintiff, who was 48 years old in January 2012, was taking his medications and was psychiatrically stable. As of January 2012, he had been

7

accepted to work within the hospital three days per week. The Reports consistently state that Plaintiff was calm and cooperative during his assessments, that his speech was coherent and relevant, that he denied any hallucinations, and that he was oriented as to time, place, and person. With respect to his intellectual functioning, the Reports state that Plaintiff reported dropping out of high school in the 11th grade and being diagnosed at that time as mildly mentally retarded. The Reports do not include any historic or current tests of intellectual functioning or any other suggestion of impaired intellectual functioning. Plaintiff also has submitted copies of an Initial Notice of Claim for Damages Against the State of New Jersey and a state court Complaint, with respect to the November 2010 incident, both of which he appears to have prepared himself.

Nothing in the psychiatric and medical records that Plaintiff has submitted suggests any significant deficit in his psychological or intellectual functioning. To the contrary, the submissions drafted by Plaintiff demonstrate a clear memory of the November 22, 2010, incident as well as an ability to articulate his theory as to why he should recover damages. Accordingly, this Court will not, at this time, conduct a Rule 17 hearing or appoint a representative.

B.  Plaintiff's Claim Against the Treatment Team

Plaintiff contends that the Treatment Team, otherwise unidentified, violated his constitutional rights by failing to prevent the attack on him, after he had put them on notice of his fear of an attack. The allegations are not sufficient to state a claim.

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992) (citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson v. Indiana, 406 U.S. 715, 738 (1972)). See also Youngberg v. Romeo, 457 U.S. 307, 324 (1982) and Jackson v. Indiana, 406 U.S. 715, 738 (1972).

In Youngberg v. Romeo, 457 U.S. 307 (1982) the Supreme Court evaluated the substantive Fourteenth Amendment liberty interests retained by civilly-committed mental patients, in freedom from unnecessary restraints. The Court held that involuntarily committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, minimally adequate or reasonable training to ensure safety, and freedom from undue restraint, id. at 317-19.

These interests, however, are not absolute. Youngberg, 457 U.S. at 319-20. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)). In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id. In Youngberg, balancing the interests of the State against the rights of involuntarily committed mentally retarded persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)). Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. In an action for damages against a professional in his individual

9

> capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints; in such a situation, good-faith immunity would bar liability.

457 U.S. at 323 (footnote omitted).

In reaching this conclusion, the Court noted that patients' liberty interest in safety is, "to some extent," in conflict with patients' liberty interest in freedom from bodily restraint. Thus, "an institution cannot protect its residents from all danger of violence if it is to permit them to have any freedom of movement. The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or lack of absolute safety is such as to violate due process." 457 U.S. at 319-20, (applied in U.S. v. Comm. of Pa., 902 F.Supp. 565 (W.D.Pa. 1995), aff'd 96 F.3d 1436 (3d Cir. 1996) and Estate of Conners by Meredith v. O'Connor, 846 F.2d 1205 (9th Cir. 1988)).

Although the Supreme Court delineated in Youngberg certain substantive liberty interests that arise directly under the Fourteenth Amendment, other liberty interests may be created by state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). Pursuant to N.J.S.A. 30:4-24.2(e)(2), each patient committed to a mental institution in New Jersey has the right to be committed "to the least restrictive conditions necessary to achieve the purposes of the treatment." The U.S. Court of Appeals for the Third Circuit has previously found that the provisions of Title 30 of the New Jersey Revised Statutes generally "suggest a state right to reasonable care." Scott v. Plante, 691 F.2d 634, 638 (3d Cir. 1982) (finding that New Jersey law provides a state right to "reasonable care" pursuant to N.J.S.A. 30:4-24.2(e)(1)).

Here, Plaintiff alleges that, after he told his Treatment Team that he feared his fellow patient would attack him, the Treatment Team considered various options and ultimately decided

not to confront the other patient, as the Team determined that course of action was less likely to lead to an altercation. Although the Treatment Team's decision did not prevent the attack, Plaintiff's factual allegations indicate that the Treatment Team did, in fact, exercise professional judgment. Plaintiff does not make a plausible claim that the Treatment Team's decision was a substantial departure from accepted professional standards, especially in light of Plaintiff's failure to allege the reason for his fear or whether he communicated to the Treatment Team the reason for his fear. Thus, there is no basis to conclude that the Treatment Team was on notice of any objectively serious risk to Plaintiff or that the Treatment Team should have taken any other action.[2] Cf. McChesney v. Hogan, Civil Action No. 09-0563, 2010 WL 3613806, *4-*6 (N.D.N.Y. Aug. 11, 2010), report and recommendation adopted by, 2010 WL 3522513 (N.D.N.Y. Sept. 2, 2010) (there must be some evidence that the defendants knew of and disregarded a serious risk of harm to the patient). Under the Youngberg standard, Plaintiff has failed to state a plausible claim for violation of his due process rights by the Treatment Team, whether his liberty interest arose under the Due Process Clause or New Jersey state law.

---

[2] Because Plaintiff has identified these defendants as his "Treatment Team," it appears to this Court that he is referring to professionals governed by the Youngberg "professional judgment" standard. The Court of Appeals for the Third Circuit has held that, even after Youngberg, nonprofessional employees who provide care for involuntarily institutionalized mentally retarded persons are subject only to a "deliberate indifference" standard. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). "The deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent." Id. at 1145 (citations omitted). To the extent the "Treatment Team" includes nonprofessionals with responsibility for Plaintiff's safety, the result would be the same. Cf. Cranford v. Manion, Civil Action No. 08-0978, 2011 WL 976557, *3-*4 (E.D. Cal. March 16, 2011) (civilly-committed mental patient seeking to proceed with a due process "failure to protect" claim governed by "deliberate indifference" standard must allege facts demonstrating that the threat of harm is objectively serious); McChesney v. Hogan, 2010 WL 3613806 at *4-*6 (same).

Because it is conceivable that Plaintiff may be able to overcome the deficiencies of his pleading with respect to this claim, however, this Court will dismiss the claim without prejudice.[3]

C.  Eleventh Amendment Immunity

Plaintiff also has named as Defendants the New Jersey Department of Human Services, the Human Services Police, and the Trenton Psychiatric Hospital. The claims against these state entities will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), which requires this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official

---

[3] Should Plaintiff seek to re-open this action and amend his Complaint, he should identify by name the members of the Treatment Team against whom he seeks to proceed, or explain his inability to do so. In a circumstance such as this, where Plaintiff alleges that he spoke with individuals known to him, he should be able properly to identify those individuals. Indeed, the "Treatment Team" is neither an individual nor a recognized entity amenable to suit. See McChesney v. Hogan, 2010 WL 3613806 at *2 n.7.

capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

The Department of Human Services is a principal department in the executive branch of the New Jersey state government, N.J. Stat. Ann. 30:1-2, and is therefore immune from suit in federal court. See Weisman v. N.J. Dep't of Human Servs., 817 F.Supp.2d 456, 464 n.10 (D.N.J. 2011); Brown ex rel. Payton v. Ancora Psychiatric Hosp., Civil Action No. 11-7159, 2012 WL 4857570, *1 (D.N.J. Oct. 11, 2012). In connection with the operation of the Department of Human Services, the Commissioner of Human Services is authorized to appoint Human Services Police, N.J.S.A. 30:4-14 et seq. To the extent Plaintiff seeks to proceed against the Human Services Police Department, it is an arm of the state government which is immune from liability under the Eleventh Amendment. See Lopez v. Harris, Civil Action No. 10-4023, 2010 WL 3312274, *4 (D.N.J. Aug. 19, 2010). To the extent Plaintiff seeks to proceed against any individual Human Services Police officers, they are immune from any action asserted against them, in federal court, in their official capacities.[4] See Kentucky v. Graham, 473 U.S. at 169.

Similarly, Trenton Psychiatric Hospital is entitled to Eleventh Amendment immunity. It is a state hospital, created by statute, N.J. Stat. Ann. 30:1-7, operated by the Department of Human Services and under the control of the Commissioner of Human Services, N.J. Stat. Ann. 30:1-12, which receives nearly all of its funding from the state treasury and which lacks authority

---

[4] In addition, Plaintiff has failed to allege any facts suggesting that any Human Services Police officers were involved in any way in the November 22, 2010, incident. **Error! Main Document Only.**"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accordingly, the claims against the Human Services Police, insofar as Plaintiff intends to assert claims against individual officers in their individual capacities, are dismissible for failure to state a claim because there are no allegations of personal involvement.

to sue or be sued in its own right, and any judgment against which would be paid from the state treasury. See Dep't of Envtl. Protection v. Gloucester Envtl. Mgmt. Servs., 923 F.Supp. 651, 660 (D.N.J. 1995) (considering factors set forth in Fitchik v. N.J. Transit Rail Ops., Inc., 873 F.2d 655 (3d Cir. 1989), and concluding that Trenton Psychiatric Hospital, formerly "Trenton State Hospital," is alter ego of New Jersey for Eleventh Amendment purposes); Brandt v. Trenton Psychiatric Hospital, Civil Action No. 09-5367, 2010 WL 5392727, *8 (D.N.J. Dec. 22, 2010) (same).

For the foregoing reasons, all damages claims against the Department of Human Services, Trenton Psychiatric Hospital, the Human Services Police Department, and Human Services Police officers in their official capacities will be dismissed without prejudice for lack of jurisdiction.[5]

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).[6] However, because it is conceivable that Plaintiff may be able to overcome the deficiencies noted herein, other than the Eleventh Amendment immunities,

---

[5] In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Weisman v. N.J. Dep't of Human Servs., 817 F.Supp.2d at 464.

[6] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ... The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted). In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file an application to re-open these claims in accordance with the court rules.

the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[7]

An appropriate order follows.

                                              s/Freda L. Wolfson
                                              Freda L. Wolfson
                                              United States District Judge

Dated: June 27, 2013

---

[7] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.